

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
   **JUDGE**

## LETTER OPINION

June 6, 2006

LaJuan F. Martin, Esq.
Martin and James
1717 K. Street N.W.
Washington, DC 20036

Renard Johnson, Esq.
8605 Cameron Street
Suite M10
Silver Spring, MD 20910
*Attorneys for Plaintiff*

David Rabinowitz. Esq.
Moses & Singer LLP
405 Lexington Avenue
New York, NY 10174-1299
*Attorney for Defendants*

      Re:    Spencer v. Hudson Trader Investment Services et al.
               Civil Action No. 03-5773 (WJM)

Dear Counsel:

      This matter comes before the Court on Defendants Hudson Trader Investment Services d/b/a HTI Agency and Essex Corporations' ("Defendants") Rule 56 motion for summary judgment, seeking to dismiss Plaintiff Robert Spencer's complaint in its entirety. The motion is opposed and the Court adjudicates this matter on the papers. Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motion is **GRANTED** and Plaintiffs' complaint is **DISMISSED** in its entirety as to all Defendants.

**BACKGROUND**

Plaintiff is an African American male born on June 27, 1952. Defendant HTI is a securities and insurance sales agency owned by Defendant Essex which operates through sales representatives located in bank branches of Hudson United Bank. (Def's Motion at 1; November 3, 2005 Affidavit of Charles B. Carroll, Jr. in Support of Defendants' Motion for Summary Judgment ("Nov. 3 Carroll Aff.") ¶ 3.)[1] HTI offers clients investment options including mutual funds, annuities, securities and insurance. HTI divides the bank branches into assorted territories with roughly equal deposit bases and then assigns these territories to representatives. Plaintiff was forty-six years old when he was first hired as a sales representative by HTI Program Director Emil Defeo and HTI Regional Sales Manager Douglas Voight in September 1998 and given a territory consisting of Paterson, New Jersey and surrounding areas. Plaintiff performed well enough at that time and region to receive a commendation from HTI. On December 15, 1999, Plaintiff resigned from HTI by letter to Defeo in which Plaintiff stressed that his tenure at HTI was "happy and productive" and praised his HTI colleagues and management. (Nov. 3 Carroll Aff. at Ex. G.)

In April 2000, Plaintiff returned and later signed a new contract with HTI under substantially the same terms and conditions of his 1998 contract. The contract could be terminated at any time, with or without cause, and for failure to meet minimum revenue requirements for any consecutive three-month period; HTI's sales force each had a $20,000 monthly minimum. (Nov. 3 Carroll Aff. ¶ 6.) Plaintiff was re-hired on a decision by Defeo and Charles B. Carroll; Carroll then became his manager during his second tenure at HTI. Upon his re-hire, Plaintiff was re-assigned to the same territories he had previously covered plus additional territories.[2] Between early 2001 and 2002, Plaintiff requested he be removed from one of his territories, the Orange branch, because of conflict with the branch manager and HTI removed him first from that branch and then from two other branches, West Orange and Roseland, when the same Orange manager moved to cover those areas as well.[3] For a period of time, Plaintiff also temporarily covered the West Patterson and Little Falls territories.

On April 30, 2002, Plaintiff was placed on probation because his sales performance regularly fell below the $20,000 minimum required in his employment contract. For example, in January, February and March 2002, he averaged less than 50% of this required minimum. At that time,

---

[1] Mr. Carroll has also provided two other affidavits, dated January 24, 2006 ("Jan. 24 Carroll Aff.") and March 9, 2006 ("Mar. 9 Carroll Aff.".)

[2] Defendants affirm that Plaintiff asked to again be assigned his old territories; Plaintiff likewise affirms that he never made such a request. (Nov. 3 Carroll Aff. ¶ 14; Spencer Aff. ¶ 10.) However, as demonstrated below, this dispute need not affect the Court's decision.

[3] Again, Defendants certify that Plaintiff asked to be removed from all three territories; Plaintiff certifies that he only asked to be removed from the Orange branch. (Nov. 3 Carroll Aff. ¶ 15; Spencer Aff. ¶ 11.) As demonstrated below, this dispute need not affect the Court's decision.

Plaintiff was warned in writing that he may be terminated if his performance did not improve above the required minimums. (Nov. 3 Carroll Aff. at Ex. J.) Plaintiff's performance did improve, and during April-July 2002 he averaged almost 90% of his required minimum, but he still failed to meet the $20,000 requirement during three of the four months. (Nov. 3 Carroll Aff. at Ex. I.) In a June 29, 2002 memo to Plaintiff, Carroll recognized his improved performance and offered to take him off of probation if Plaintiff had "one more month above $20,000." (Nov. 3 Carroll Aff. at Ex. K.) However, Plaintiff only achieved 37% of that goal in August 2002, 61% in September 2002, and 25% in October 2002. (Nov. 3 Carroll Aff. at Ex. I; Spencer Aff at Ex. G.)

On October 31, 2002, Carroll and Plaintiff exchanged emails regarding Plaintiff's failure to meet target sales; Carroll also asked Plaintiff to explain certain unexcused absences. Plaintiff replied that he realistically expected $15,000 monthly "based on the branches you guys left me with." Plaintiff further responded that he thought it was acceptable to take time off if he had proper coverage; he further asserted that he had never previously cleared absences before, and that he "has never heard of anyone having to have days off cleared." (Nov. 3 Carroll Aff. at Ex. N.) Carroll replied in a memo dated November 4, 2002 that Plaintiff had cleared time with him in the past and must continue to do so in the future; Carroll further said that he considered "the email you sent me to be insubordinate" and referred Plaintiff to the terms of his probation regarding insubordinate behavior. (Nov. 3 Carroll Aff. at Ex. M, O.) Plaintiff and Carroll met repeatedly in November 2002 to discuss Plaintiff's progress. In a memorandum dated November 21, 2002, Carroll memorialized that Plaintiff had asked for "space to allow you to meet your goals" and Carroll intended "to help . . . in any way I can." (Nov. 3 Carroll Aff. at Ex. P.) However, Plaintiff's November 2002 sales were only $11,892. During December 2002, Carroll met with Plaintiff to allow him to explain the unexcused absences; Plaintiff was unable to do so. (Nov. 3 Carroll Aff. ¶ 27.)

After discussion between Carroll and Defeo, HTI terminated Plaintiff on December 31, 2002. In a memorandum of the same date from Carroll to Plaintiff and copying Defeo, Carroll outlined the reasons for Plaintiff's termination including Plaintiff's failure to meet sales minimums after his April 2002 probation, his unexcused absences and insubordination.

Plaintiff filed a charge of discrimination against HTI with the Equal Employment Opportunity Commission ("EEOC"); and EEOC issued a Notice of Right to Sue (Issued on Request) dated September 5, 2003 stating that EEOC was terminating Plaintiff's case at Plaintiff's request and because more than 180 days had passed since the filing of the Charge. On December 3, 2003, Plaintiff filed his Complaint with this Court claiming causes of action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623, alleging discriminatory treatment of Plaintiff by Defendant on the basis of race and age.[4]

---

[4] The Court takes the opportunity here to point out that, throughout the later stages of this litigation, Plaintiff's counsel has engaged in tactics that have repeatedly delayed this litigation and created burdensome work for the Court and Defense counsel. Specifically, the Court refers to its letter order of December 30, 2005 which stated that "[t]he Court is troubled by Plaintiff Counsel's dilatory habits and inaction, including lateness of this filing, the incomplete filing of

Plaintiff's first cause of action, his race discrimination claim, alleges that he was discriminately assigned to minority dominated and Spanish-speaking territories, that his request for transfer was denied and the territories he sought were given to non-African American consultants, and that his termination for failure to meet sales goals was based on his race.

Plaintiff's second cause of action, for age discrimination, alleges that HTI denied Plaintiff assignment of new territories, instead hiring a consultant aged below forty while Plaintiff was fifty-one.

Plaintiff demands a declaratory judgment that he suffered discrimination and also demands compensatory, general and special damages with interest, punitive damages, costs and fees.

**DISCUSSION**

**I.     Standard for Summary Judgment Pursuant to Rule 56**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 247-48. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.    Plaintiff's Race and Age Discrimination Claims**

Title VII prohibits discrimination in employment, including that which is based upon race; the ADEA prohibits such employment discrimination against persons 40 years of age or older. Discrimination claims under both Title VII and the ADEA are analyzed according to the burden shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973). *See*

---

this motion with the Court, and failure to respond to repeated telephone requests from the Court . . . ." Despite this letter, the Court did not hear from Plaintiff's counsel for more than a month, and well after the Court's generously extended timeline. The Court faults Plaintiff's counsel for behavior that could potentially have been devastating to his client. Indeed the lateness of Plaintiff's eventual response and filing led the Court, in a letter of February 8, 2006, to clarify that "[s]o as not to unduly prejudice Plaintiff for counsel's behavior, the Court will accept Plaintiff's brief as filed." The Court further notes that Plaintiff's counsel did file [however late], and the Court accepted, full briefing on this matter.

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *Hankins v. Temple Univ.*, 829 F2d 437, 440 (3d Cir, 1987). S*ee also Waldron v. SL Indus. Inc.*, 56 F.3d 491, 495 n.4 (3d Cir. 1995).

First, the plaintiff has the burden of production, by a preponderance of the evidence, to make out a *prima facie* case of discrimination based on race or age. A Title VII plaintiff must show (1) that he is within a protected group; (2) that he was qualified for the position in question; (3) that he suffered an adverse employment action despite his qualifications; and (4) that others not in the protected class were treated more favorably giving rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802.[5] If the plaintiff can establish a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for plaintiff's termination. *McDonnell Douglas*, 411 U.S. at 802.[6] The defendant "satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763.

Once the defendant satisfies its "relatively light burden," the burden shifts back to the plaintiff who must then show that the defendant's proffered reason or reasons are a pretext for discrimination. *Id.* The plaintiff can accomplish this by "pointing to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the [defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the" defendant's action. *Id.* at 764. The plaintiff cannot undermine the defendant's legitimate reasons by simply showing that the defendant's "decision was wrong or mistaken." *Id.* at 765. Instead, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.*

For the purposes of this motion for summary judgment, the Court will assume, arguendo, that Plaintiff has met his prima facie case of race and age discrimination. Having thus shifted the burden to Defendants, the Court finds that they have likewise articulated legitimate, nondiscriminatory reasons for dismissing Plaintiff and assigning his territories, namely his inability to meet required minimums, his unexcused absences and insubordination. (Nov. 3 Carroll Aff. at ¶ 20, 23, 24, Ex. H, M, N; Spencer Aff. ¶¶ 48-50, Ex. E.) Because Defendants have carried their burden, the next step is for Plaintiff to demonstrate that Defendants' proffered reasons were pretexts for discrimination

---

[5] "A prima facie case of age discrimination [under the ADEA] is demonstrated where the plaintiff demonstrates that he or she (1) is a member of a protected class (i.e., at least 40 years of age); (2) was performing his job in a satisfactory manner; (3) was discharged despite being qualified; and (4) was ultimately replaced by a person sufficiently younger with equal or inferior qualifications." *Barone v. Gardner Asphalt Corp.***,** 955 F.Supp. 337, 344 (D.N.J. 1997).

[6] Despite this shift of the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

under either of the *Fuentes* prongs.  It is here that Plaintiff's case fails.  On the evidence before the Court, it cannot be said that a reasonable factfinder could conclude that Plaintiff was assigned territories or terminated for any invidious discriminatory reason.

With respect to the first *Fuentes* prong, Plaintiff has not set forth any evidence by which a factfinder could discredit the proffered reasons for territorial assignment or termination.  Plaintiff acknowledges that he was removed from certain territories at his request, and he never denies that he failed to meet the minimum sales goals; nor does he argue he was unaware of his accused insubordination, his probationary stature and the possibility that he might be terminated for failure to meet sales minimums.  He likewise affirms that he requested transfer from the Orange branch and was absent without Carroll's prior permission. (Spencer Aff. ¶¶ 11, 44, 48-50, Exs. A, B, E, J.)  It is also clear that Plaintiff was absent from work without Carroll's prior approval.  (Nov. 3 Carroll Aff. at Ex. N, O.)  Plaintiff has demonstrated no inconsistencies, weakness or incoherencies in Defendants' proffered reasons for termination, and thus no rational factfinder could "infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 759.

With regard to the second *Fuentes* prong, Plaintiff has not come forth with any competent evidence to suggest that an impermissible discriminatory reason motivated Defendants' decision to terminate him.  Plaintiff presents two lines of argument in support of his race claims.  First he attributes his failure to Defendants' supposed policy of rarely hiring African Americans and then only assigning them to "minority" territories with less disposable income; he further alleges that he was denied transfer to, and removed from, more profitable areas because he was an African American and of a certain age.  Second, Plaintiff claims that similarly situated white employees were treated better than he was.  Both of these allegations are demonstrably false.

In support of his allegations about minority hiring and territory assignments, Plaintiff offers a listing of HTI "year end totals" from 1998-2004 outlining ethnic makeup and geographic assignments[7] of HTI employees.  The Court's review of these documents shows that, while the majority of HTI employees were white, the company consistently employed minorities.  For example, of 28 HTI employees listed on the year-end total for 1999, three are minorities.  Two  of 25 were minorities in 2000, six of 33 in 2001, three of 28 in 2002, three of 24 in 2003 and two of 22 in 2004. (Spencer Aff. at Ex. D.)  Furthermore, the areas assigned the minority employees were disparate, and Plaintiff offers no evidence outlining the ethnic breakdown of these areas or demonstrating that  minority hires were disproportionately low compared to the applicant pool; indeed, Mr. Spencer, an African American, was hired by HTI and assigned at times to areas he himself considered "white."  (Spencer Aff. ¶¶ 11-14).  Moreover, data such as "numerical comparisons . . . not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period" are inherently weak evidence of racial animus.  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 542 (3d Cir. 1992).  Because no

---

[7] Although it is unclear from the attachments or Plaintiff's pleadings, the Court assumes that "area" means the assigned territory for the relevant employee.

conclusion can be drawn from this data, it is not supportive of Plaintiff's allegations of discrimination.

Furthermore, Defendants attest that all territories have equivalent bank deposits of $100-170 million, are unassociated with any ethnic data, and are assigned based on availability; and Plaintiff's affidavit supports HTI's claim that assignment was based on availability. (Nov. 3 Carroll Aff. ¶¶ 4-5; Jan. 24 Carroll Aff. ¶ 20; Mar. 9 Carroll Aff. ¶ 4; Def's Reply Brief at 10; Spencer Aff. ¶ 15.) The relevant evidence in no way demonstrates that Defendant was assigned or removed from territories on racial motivation. Indeed, upon his return to HTI, Defendant was assigned the same territory he held, with great success, during his first tenure. (Nov. 3 Carroll Aff. ¶ 14; Ex. F.) Finally, evidence demonstrates that Plaintiff's removal from three "white" territories was due to conflict with the manager of those territories, and based on Plaintiff's request. (Spencer Aff. ¶ 11; Mar. 9 Carroll Aff. ¶¶ 6-7.) In sum, Plaintiff has failed to demonstrate that HTI's hiring or assignment processes were discriminatory as to him or any other employee.

Likewise, Plaintiff's allegations that similarly situated white employees were treated differently at HTI is plainly wrong. In support of his position, Plaintiff claims that eight white HTI employees, each of whom failed to meet their sales goals during three consecutive months, were never placed on probation, issued warnings, or otherwise sanctioned. (Spencer Aff. ¶¶ 45-46.) However, Defendants present evidence that, of the employees Plaintiff named that were likewise under Mr. Carroll's supervision, all were disciplined at about the same time as Plaintiff for not meeting performance goals, and each subsequently resigned or was terminated. (Jan. 24 Carroll Aff. ¶¶ 14, 18, Ex. X; Nov. 3 Carroll Aff. at Ex. S.) Another of those white HTI employees singled out by Defendant, and who was not managed by Mr. Carroll, was likewise disciplined. (Mar. 9 Carroll Aff. ¶ 9, Exs. AA-CC.) In addition, Defendants provide evidence of two other white sales representative managed by Mr. Carroll – and not mentioned by Mr. Spencer – who were disciplined and terminated for non-performance; this is in addition to general HTI employment data showing that, of a total of fifteen HTI employees terminated for lack of production between 1999 and 2004, eleven were white. (Mar. 9 Carroll Aff at Exs. Z, DD, EE; Nov. 3 Carroll Aff. at Ex. T.)

A similar result applies to Plaintiff's age discrimination claim for which he has presented no evidentiary support. (Pl's Opp. Brief at 17.) Defendants, on the contrary, have demonstrated that Plaintiff was assigned territories for non-discriminatory reasons including his own requests. Further countering Plaintiff's assertion of age discrimination, at least two of the aforementioned similarly situated white employees disciplined for non-performance were younger than Plaintiff; and Defendants have presented evidence of other, younger, HTI employees also terminated for lack of production between 1999 and 2004. (Mar. 9 Carroll Aff at Ex. Z; Nov. 3 Carroll Aff. at Ex. T.)

### III.     Plaintiff's Claims as to Defendant Essex Must be Dismissed

Although Plaintiff names Essex Corporation as a Defendant, Plaintiff failed to exhaust the proper procedural remedies as to Essex prior to filing suit. Before filing his age and race discrimination claims against Essex, Plaintiff was required to file an EEOC charge. *See, e.g. Watson v. Eastman Kodak Co.*, 235 F.3d 851 (3d Cir. 2000). Plaintiff filed his charge only as to HTI, so this

suit must be dismissed as to Essex. (Spencer Aff. at Exs. H, I.; Mar. 9 Carroll Aff. ¶ 15.) Furthermore and based on the evidence presented, had Plaintiff properly brought this suit against Essex, the result would have been the same.[8]

**CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED** in its entirety. Plaintiff's complaint is hereby **DISMISSED** as to all Defendants.

s/ William J. Martini
William J. Martini, U.S.D.J.

cc:    The Hon. Ronald J. Hedges, U.S.M.J.

---

[8] The weight of authority supports a court's *sua sponte* grant of summary judgment where a legal issue has been fully developed, and the evidentiary record is complete. See Gibson v. Mayor and Council of the City of Wilmington, 355 F.3d 215, 222-24 (3d Cir. 2004).